IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

JONATHAN PARKER,

     Plaintiff,

v.                                          No. 05-1358 B

HENDERSON COUNTY, TENNESSEE, et al.,

     Defendants.

_____

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT OF
DEFENDANTS HENDERSON COUNTY, TENNESSEE,
SHERIFF RICKY LUNSFORD, MARK WOOD AND CHRIS JAMES
_____

## INTRODUCTION AND PROCEDURAL BACKGROUND

This lawsuit was brought by the Plaintiff, Jonathan Parker, against various Defendants alleging, pursuant to 42 U.S.C. § 1983, violation of his civil rights.  He also alleges violation of the Tennessee Constitution, as well as state law claims of negligence, gross negligence, assault, battery and false arrest.  Before the Court is the motion of Defendants Henderson County, Tennessee (the "County"); Sheriff Ricky Lunsford; Mark Wood and Chris James for summary judgment in accordance with Rule 56 of the Federal Rules of Civil Procedure.

## STANDARD OF REVIEW

Rule 56, which states in pertinent part that a

. . . judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91

L.Ed.2d 265 (1986); Canderm Pharmacal, Ltd. v. Elder Pharm., Inc., 862 F.2d 597, 601 (6th Cir.

1988).  In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).  When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."  Celotex, 477 U.S. at 324, 106 S.Ct. at 2553.  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S.Ct. at 1356.  These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).  The "judge may not make credibility determinations or weigh the evidence."  Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

If a party fails to respond to a motion for summary judgment as to certain claims, "summary judgment, if appropriate, shall be entered against him."  Fed. R. Civ. P. 56(e).  "The fact that [a plaintiff] did not respond to [a request for disposition of particular claims] does not require [the granting of the motion].  However, if the allegations of the complaint are contravened by [the defendant's] affidavits and [the defendant] is entitled to judgment as a matter of law on those facts, then summary judgment is appropriate."  Millinder v. Bowman, No. 1-04-1096-T-AN, 2004 WL 2238526, at *2 (W.D. Tenn. Aug. 25, 2004) (citation omitted).

FACTS

2

The Plaintiff has alleged the following in his complaint.  Parker, at the time the incidents occurred from which this action arose, resided at 23 Fesmire Park Cove in Lexington, Tennessee. At about 10:27 p.m. on November 19, 2004, officers from the Henderson County Sheriff's Department and the Lexington Police Department arrived at Parker's home to serve a search warrant, even though the warrant actually authorized the search of a residence located at 38 French Park Cove, for crack cocaine.  Under the supervision of Defendant David Stanhope, several officers surrounded the home.  Stanhope approached the rear door of the residence and, seeing Parker inside, fired his weapon, striking the Plaintiff in the right shoulder and upper torso.  At that point, officers, including Stanhope and Defendants Jeff Middleton and Brent Marcum, entered the dwelling, took Parker into custody and transported him to a hospital for treatment of his wounds.

James, in an affidavit submitted in support of the motion, avers that, on the date of the shooting he received tips from two reliable confidential informants that Parker was selling crack cocaine out of his trailer and that he had in his possession a small caliber pistol.  (Aff. of Chris James ("James Aff.") at ¶ 5)  These informants had provided information that clearly established a history of reliability and knowledge.  (James Aff. at ¶ 6)  Based on the facts obtained from the informants, James prepared an affidavit to obtain a search warrant for Parker's home.  (James Aff. at ¶ 7)  He asserted that "[t]he confidential informant who supplied the tip which led to probable cause that crack cocaine was present at the Plaintiff's residence had previously pointed out and visually identified the Plaintiff's residence to [him]."  (James Aff. at ¶ 11)

The search warrant was issued by Henderson County General Sessions Judge Steve Beal based on James' affidavit.  The warrant reflected that there was probable cause to believe that a black male known as "BigMan" had crack cocaine in his possession and that he occupied certain property

3

described in the warrant as follows:

> Leaving the south door of the Henderson County Courthouse Traveling west on Main Street approximately .1 miles to the intersection of Main Street and South Broad Street then turn left onto South Broad Street  and travel approximately 1.2 miles south to the intersection of South Broad Street and Ayers Street and then turn left onto Ayers Street and travel Ayers Street to the intersection of Ayers Street and French Park Cove and turn left onto French Park Cove which is a trailer park and then travel to trailer #38 which has the trailer markings #38 clearly marked on the outside of the trailer this being the residence inhabited [by] said black male AKA BigMan.

(James Aff., Ex.)

James requested assistance from the Lexington Police Department in executing the search warrant.  (James Aff. at ¶ 2, Aff. of Jeff Middleton ("Middleton Aff.") at ¶ 5, Aff. of David Stanhope ("Stanhope Aff.") at ¶ 6, Aff. of Brent Marcum ("Marcum Aff.") at ¶ 5)  Lexington police officers Middleton, Stanhope and Marcum, along with Defendant Wood of the Henderson County Sheriff's Department, executed the warrant.  (James Aff. at ¶ 12, Aff. of Mark Wood ("Wood Aff.") at ¶¶ 6, 10)  Stanhope was the first to arrive on the scene.  (James Aff. at ¶ 13)

Middleton stated in his affidavit that, prior to execution of the warrant, James knew which trailer was to be searched and described its exact location to Stanhope.  (Middleton Aff. at ¶ 9)  James described to Stanhope the trailer and its location, including the fact that it sat parallel to the road while the neighboring trailer was perpendicular to the street.  (Stanhope Aff. at ¶ 8, James Aff. at ¶ 21)  Stanhope's surveillance of the area before the warrant was executed revealed that Parker's trailer was the target of the warrant.  (Stanhope Aff. at ¶ 9)  Middleton also asserted in his affidavit that "[t]he warrant contains directions which, when followed, lead . . . to Plaintiff's trailer.  When following these directions and information provided by Investigator James, [the officers] were lead to Plaintiff's trailer.  The trailer in which Plaintiff was living at the time was the intended target of

4

the search warrant." (Middleton Aff. at ¶¶ 43-44)

Stanhope drove to the trailer, parked his vehicle under a street light and emerged from the car dressed in his uniform. (Stanhope Aff. at ¶¶ 10-11) As the officers neared the trailer, James was talking to one of the confidential informants on the telephone, confirming the location of the Plaintiff's residence. (James Aff. at ¶ 22) Stanhope approached Parker, who was outside the trailer. (Stanhope Aff. at ¶¶ 12-13) Parker turned and ran inside. (Stanhope Aff. at ¶ 14) The officer radioed Middleton, who was parked nearby with Marcum out of view of the trailer, advising that the suspect had fled into the trailer. (Middleton Aff. at ¶ 21; Stanhope Aff. at ¶ 15)

Stanhope recalled in his affidavit that he "went to the front door of the trailer, knocked, and identified [himself] as a police officer with a search warrant. [He] tried to open the door, but it was locked." (Stanhope Aff. at ¶ 16) When Middleton arrived at the scene from where he was hidden in a nearby location, Stanhope was knocking on the door of the mobile home. (Middleton Aff. at ¶¶ 20, 22)

Stanhope indicated the suspect had moved to the darkened area behind the trailer and the two officers moved in that direction in order to keep him from escaping. (Middleton Aff. at ¶¶ 22-23; Stanhope Aff. at ¶¶ 17-19) According to Stanhope, Parker appeared in the back doorway with the door open and an object in his right hand. He stated that he "saw a glare of light off the object and believed [Parker] to be armed." (Stanhope Aff. at ¶ 20) Stanhope stated that he again identified himself as a police officer and ordered Parker to show his hands and to "drop it." (Stanhope Aff. at ¶ 21) The command was repeated several times but, Stanhope insists, the Plaintiff did not comply. (Stanhope Aff. at ¶¶ 22-23) Rather, the officer recalled that Parker turned toward him, with the object still in his right hand, and pointed it at him. (Stanhope Aff. at ¶ 24) Stanhope fired,

striking Parker, who retreated into the trailer and closed the door.  (Stanhope Aff. at ¶¶ 25-26)  Middleton averred that, when he arrived at the rear of the trailer after the shooting had taken place, the back door of the dwelling was closed and Stanhope was aiming his weapon in the area of the door.  (Middleton Aff. at ¶ 27)  Stanhope advised him that "the suspect pointed something at him and fled back inside."  (Middleton Aff. at ¶ 28)  It was Marcum's statement that Stanhope started moving toward the rear of the trailer as he and Middleton entered the driveway.  (Marcum Aff. at ¶ 15)  Middleton got out of the car and started to follow.  (Marcum Aff. at ¶ 17)

Marcum articulated that "[a]s [he] was getting out of [his] car on the south end of the trailer, [he] heard Officer Stanhope shout 'let me see your hands' and then [he] heard three shots.  Then [he] heard Officer Stanhope shout that the suspect had run back inside the trailer.  [Marcum] was not able to see what occurred prior to the shooting."  (Marcum Aff. at ¶ 18)  James, who was the last to arrive, heard gunfire just as he exited his vehicle at the front of the trailer and took cover, unaware of the direction of the shots.  (James Aff. at ¶¶ 14-16)  When Stanhope moved to the rear of the residence, Wood posted in front in order to secure the front door, where he remained until after Parker was taken into custody.  (Wood Aff. at ¶¶ 14-18)  Throughout the events, James was positioned at the front of the mobile home with Wood.  (James Aff. at ¶¶ 16-20)

## MERITS OF THE DISPOSITIVE MOTION AND ANALYSIS

A.   Federal Claims.

1.   Section 1983 Generally.

Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution or laws."  42 U.S.C. § 1983.  In order

to prevail on such a claim, a § 1983 plaintiff must establish "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law." Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003). "Section 1983 is not the source of any substantive right, but merely provides a method for vindicating federal rights elsewhere conferred." Humes v. Gilless, 154 F.Supp.2d 1353, 1357 (W.D. Tenn. 2001).

      2.    <u>Individual Liability Under § 1983.</u>

      Defendant Lunsford seeks dismissal of the Plaintiff's § 1983 claims against him in his individual capacity. An individual may be sued under § 1983 in either his official or individual capacity. <u>Gean v. Hattaway</u>, 330 F.3d 758, 765-67 (6th Cir. 2003). "A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." <u>Matthews v. Jones</u>, 35 F.3d 1046, 1049 (6th Cir. 1994) (citing <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 68, 109 S.Ct. 2304, 2310-11, 105 L.Ed.2d 45 (1989)). Where an individual such as a sheriff is sued in his individual capacity, liability of the supervisory official is appropriate only if "the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it, or at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." <u>Leary v. Daeschner</u>, 349 F.3d 888, 903 (6th Cir. 2003) (citations and internal quotation marks omitted). Liability "must be based on more than the right to control employees. Likewise, simple awareness of employees' misconduct does not lead to supervisor liability." <u>Id.</u> (internal citations and quotation marks omitted). In this case, it is undisputed that Lunsford was neither involved in the execution of the search warrant nor present at the time it was executed or when the shooting occurred. No evidence has been presented to establish that Lunsford

encouraged, participated in, approved of, or even had prior knowledge of the officers' alleged actions at the Parker home. In fact, the Plaintiff's failure to address this argument in his response to the dispositive motion may indicate abandonment of this allegation. Regardless, the Defendants' motion for summary judgment as to the § 1983 individual capacity claim against Lunsford is GRANTED.

3.    Municipal Liability Under § 1983.

Even assuming a constitutional violation has occurred, it does not necessarily follow that liability may properly be laid at the doorstep of the municipality. Local governments such as the County are considered "persons" for purposes of the second prong of the § 1983 showing. Holloway v. Brush, 220 F.3d 767, 772 (6th Cir. 2000). Nonetheless, municipalities are not "liable for every misdeed of their employees and agents." Alkire v. Irving, 330 F.3d 802, 814-15 (6th Cir. 2003) (quoting Garner v. Memphis Police Dep't, 8 F.3d 358, 363 (6th Cir. 1993)). "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell v. N.Y. City Dep't of Soc. Serv., 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). Instead, the Supreme Court has held that "a plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Bd. of County Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. 397, 403, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997) (citing Monell, 436 U.S. at 694, 98 S.Ct. at 2027); Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81, 106 S.Ct. 1292, 1298-99, 89 L.Ed.2d 452 (1986); and City of Canton, Ohio v. Harris, 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989)). "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." Brown, 520 U.S. at 404, 117 S.Ct. at 1388 (citing

Monell, 436 U.S. at 690-91, 98 S.Ct. at 2035-36).

> A "custom" for purposes of Monell liability must be so permanent and well settled
> as to constitute a custom or usage with the force of law.  In turn, the notion of "law"
> must include deeply embedded traditional ways of carrying out state policy.  It must
> reflect a course of action deliberately chosen from among various alternatives.  In
> short, a "custom" is a "legal institution" not memorialized by written law.

Doe v. Claiborne County, Tenn., 103 F.3d 495, 507-08 (6th Cir. 1996) (internal quotation marks and

citations omitted).  A plaintiff must, in order to show a custom or policy, adduce specific facts in

support of his claim.  Conclusory allegations will not lie.  Culberson v. Doan, 125 F.Supp.2d 252,

263-64 (S.D. Ohio 2000).

It is not enough for a § 1983 plaintiff to identify conduct attributable to a municipality.

Rather,

> [t]he plaintiff must also demonstrate that, through its *deliberate* conduct, the
> municipality was the "moving force" behind the injury alleged.  That is, a plaintiff
> must show that the municipal action was taken with the requisite degree of
> culpability and must demonstrate a direct causal link between the municipal action
> and the deprivation of federal rights.

Brown, 520 U.S. at 404, 117 S.Ct. at 1388 (emphasis in original).  "[A] showing of simple or even

heightened negligence will not suffice."  Culberson, 125 F.Supp.2d at 263.  Thus, to recover, a

plaintiff

> must show that his civil rights were violated pursuant to and as a direct result of the
> [municipality's] official policy or custom.  The burden in this regard requires a
> showing that the unconstitutional policy or custom existed, that the policy or custom
> was connected to the [municipality], and that the policy or custom caused his
> constitutional violation.

Napier v. Madison County, Ky., 238 F.3d 739, 743 (6th Cir. 2001) (internal citations omitted).  In

a case alleging failure to train officers, a plaintiff must establish that the municipality's failure "in

a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants."  See Ferguson

v. Leiter, 220 F.Supp.2d 875, 884 (N.D. Ohio 2002) (quoting Canton, 489 U.S. at 389, 109 S.Ct. 1197); Humes, 154 F.Supp.2d at 1363.

The Plaintiff has alleged in this action[1] that the County wrongfully permitted its deputies to use excessive force and that it failed to properly hire, train and supervise its employees.  However, Parker has failed to identify, as he must, a policy or custom of the County which caused his injury. The only language in his complaint that suggests a policy or custom is contained in his allegation that the Defendants' actions violated "the policies and customs of the Sheriff's Department of Henderson County, Tennessee." (Compl. at ¶ 18)  This conclusory allegation, absent specific facts to support the claim, are insufficient to survive summary judgment.

Parker also alleges in his complaint that the County failed to supervise employees.

A plaintiff may bring an action for inadequate police supervision under § 1983. Mere negligence is insufficient; the failure must be so gross that future police misconduct is substantially certain to result.  Even when gross negligence is demonstrated, a strong causal link must be established between the inadequacies in the training and supervision and the specific wrongdoing which injured the plaintiff. More specifically, a plaintiff must show both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate[s] are present.

Cunningham v. Reid, 337 F.Supp.2d 1064, 1076 (W.D. Tenn. 2004) (internal citations and quotation marks omitted).  In this case, the Plaintiff has not alleged that the policymaker for the County had contemporaneous knowledge of the occurrence.  Nor has any evidence been proffered to suggest a "prior pattern of similar incidents."

Finally, the Plaintiff's claim of failure to train must also succumb to summary judgment.  The

---

[1]The Court must rely on the Plaintiff's allegations as set forth in the complaint with respect to his § 1983 against the County, as he has put forth no argument as to that claim in his response to the motion for summary judgment.

"deliberate indifference" standard that must be met in establishing municipal liability based on a failure to train is a "stringent" one. See id. at 1077. "Inadequate training constitutes a municipal policy only if 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the municipality can reasonably be said to have been deliberately indifferent to the need.'" Id. (quoting Canton, 489 U.S. at 390, 109 S.Ct. 1197). "It is not sufficient merely to show that a particular officer [or officers] acted improperly or that better training would have enabled an officer to avoid the particular conduct causing injury." Id. at 1078 (citing Simmons v. City of Philadelphia, 947 F.2d 1042, 1059-70 (3d Cir. 1991), cert. denied, 503 U.S. 985, 112 S.Ct. 1671, 118 L.Ed.2d 391 (1992)).

The Defendants have attached to their motion Lunsford's affidavit, in which he avers that officers employed by the County must "receive and complete forty (40) hours of in-service training annually" and "successfully complete recruit training as certified by the Peace Officer Standards and Training ("POST") commission within one year of their date of employment[] and thereafter just successfully complete an annual in-service training session appropriate for their rank and responsibilities." (Aff. of Sheriff Ricky Lunsford ("Lunsford Aff.") at ¶¶ 9-10)  Deputies also "receive in-service training  and training at the Tennessee Law Enforcement Training Academy ("TLETA") on obtaining and executing search warrants, as well as the probable cause that is needed to obtain warrants." (Lunsford Aff. at ¶ 7)  Lunsford further stated that James and Wood graduated from TLETA, are POST certified and received all necessary in-service training.  (Lunsford Aff. at ¶ 13)  The Plaintiff has presented nothing whatever to contravene the Defendants' proof that the Defendant officers were adequately trained.  Nor has he made any showing that the need for more or different training was so obvious as to constitute deliberate indifference.

11

Based on the Plaintiff's failure to establish municipal liability, summary judgment is GRANTED as to the County.

4.    Qualified Immunity.

As a shield to a § 1983 action, an individual defendant may argue that he is entitled to qualified immunity. Crockett v. Cumberland Coll., 316 F.3d 571, 579 (6th Cir. 2003). "[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 1696, 143 L.Ed.2d 818 (1999). (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)); see also Buckner v. Kilgore, 36 F.3d 536, 539 (6th Cir. 1994), reh'g and suggestion for reh'g en banc denied (Nov. 21, 1994). In Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the Supreme Court articulated a two step test to determine whether qualified immunity is appropriate. Saucier, 533 U.S. at 200-01; 121 S.Ct. at 2155-56; see also Soloman v. Auburn Hills Police Dep't, 389 F.3d 167, 172 (6th Cir. 2004). "A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier, 533 U.S. at 200-01, 121 S.Ct. at 2155-56. If this question is answered in the affirmative, "the next, sequential step is to ask whether the right was clearly established." Id. at 201, 121 S.Ct. at 2156. As to the second step, the court must decide "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted, . . . without regard to [his] underlying intent or motivations." Soloman, 389 F.3d at 173 (citations and emphasis omitted). In order to support

12

a finding that an officer is entitled to qualified immunity, it must be concluded that his actions were objectively reasonable.  Id. at 174.

Although the Plaintiff failed to identify in his complaint the source of the constitutional violation, the Court notes that claims of excessive force and execution of a search warrant absent probable cause are properly analyzed under the Fourth Amendment, which protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation."  U.S. Const. amend. IV; see Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989); Tallman v. Elizabethtown Police Dep't, 167 F.App'x 459, 462 (6th Cir. 2006) (citing Graham).  The Constitution does not prohibit all searches or seizures of the person, but rather those made without proper authorization.  Such actions are presumptively unreasonable.  When a search or seizure occurs, the Constitution requires, in order for the Fourth Amendment's reasonableness standard to be satisfied, that the search or seizure be supported by probable cause.  Cunningham, 337 F.Supp.2d at 1072.[2]

Defendants James and Wood[3] argue that they are entitled to qualified immunity concerning the execution of the search warrant.

> In determining whether a warrant describes with sufficient particularity the place to be searched, [the court must consider]:  (1) whether the place to be searched is described with sufficient particularity as to enable the executing officers to locate

---

[2]Although the Plaintiff mentions "deliberate indifference" several times in his complaint, Fourth Amendment claims are analyzed under the reasonableness standard.  See Graham, 490 U.S. at 395, 109 S.Ct. at 1871; Goins v. City of Detroit, 408 F.Supp.2d 387, 394 n.4 (E.D. Mich. 2005).

[3]The Court notes that Parker offers no response to Wood's argument in favor of summary judgment on qualified immunity grounds.

and identify the premises with reasonable effort; and (2) whether there is reasonable probability that some other premises may be mistakenly searched.

Knott v. Sullivan, 418 F.3d 561, 568 (6th Cir. 2005) (citation and internal quotation marks omitted). "The evil that the framers of the Constitution were trying to eradicate with the particularity requirement was the so-called general warrant that allowed officers to search at random.  This requirement eliminates generalness and provides both a reason for and limitation of the search." United States v. Durk, 149 F.3d 464, 466 (6th Cir. 1998).

It is undisputed that the trailer in which Parker lived was not number 38 and bore no markings to that effect.  However, "technical inaccuracies in a warrant do not automatically render unconstitutional searches conducted pursuant to such a warrant."  Knott, 418 F.3d at 568-69.  In Durk, the search warrant authorized the search of "a single family red brick ranch home located at 4612 Fulton in the City of Royal Oak . . .  Said dwelling house is located on the north side of Fulton and is approximately 3 houses to the east of Grandview with the numbers 4612 affixed near the front door." Durk, 149 F.3d at 465.  In actuality, however, the defendant's house number was *4216* and located three houses *west* of Grandview.  Id.  The court found that the purposes of the particularity requirement were served despite the inaccuracies, noting that the warrant correctly described the house itself; the warrant specified that the defendant was the occupant of the dwelling; and the executing officer was also the affiant.  Id. at 466.  The court concluded that under these circumstances, "no reasonable probability existed that the officers would search the wrong premises as a result of the inaccuracies in the warrant."  Id.; see also United States v. Pelayo-Landero, 285 F.3d 491, 497-98 (6th Cir. 2002) (no constitutional violation where warrant description included specific directions from an "identifiable point to the mobile home park" and once inside, directions to a specific trailer, and where the officer who was team leader at the search also prepared the

14

affidavit incorporated into the warrant**).**

In this case, the warrant gave detailed directions from the police department to the Plaintiff's trailer. The Plaintiff has offered no evidence to dispute that the language of the search warrant did not, other than the address, accurately set forth the directions to the trailer in which he lived. He also does not dispute that he resided in the mobile home approached by the officers and at which he was arrested. Moreover, James, the affiant, was involved in the execution of the search warrant and personally gave Defendant David Stanhope verbal directions on how to locate the trailer to be searched. Based on these facts, there was no reasonable probability that some other premises may have been mistakenly searched. Accordingly, the Court finds that no Fourth Amendment violation occurred. See Johnson v. Wolgemuth, 257 F.Supp.2d 1013, 1036 (S.D. Ohio 2003) (reiterating that "where a description of the house to be searched is given, specific reference is made to the house's occupant, and the warrant is executed by an officer already familiar with the location, due to prior surveillance, inaccuracies in the description of the street address will not render a warrant unconstitutional," citing Pelayo-Landero). As the Court finds that the officers' conduct concerning the search warrant did not violate a constitutional right, summary judgment on the grounds of qualified immunity is appropriate. See Saucier, 533 U.S. at 200-01, 121 S.Ct. at 2155-56 (setting forth elements necessary for finding of qualified immunity). The motion is therefore GRANTED.

5.   Excessive Force Claims.

The Defendants next seek summary judgment as to the Plaintiff's claims of excessive force. In an excessive force claim pursuant to the Fourth Amendment, the plaintiff must show that the defendant's actions were, under the circumstances, objectively unreasonable. See Scott v. Clay County, Tenn., 205 F.3d 867, 876 (6th Cir.), cert. denied, 531 U.S. 874, 121 S.Ct. 179, 148 L.Ed.2d

123 (2000).

In defining the boundaries of Fourth Amendment reasonableness, the Supreme Court has

stated as follows:

> Determining whether the force used to effect a particular seizure is "reasonable"
> under the Fourth Amendment requires a careful balancing of the nature and quality
> of the intrusion on the individual's Fourth Amendment interests against the
> countervailing governmental interests at stake . . . . Because the test of
> reasonableness under the Fourth Amendment is not capable of precise definition or
> mechanical application, however, its proper application requires careful attention to
> the facts and circumstances of each particular case, including the severity of the
> crime at issue, whether the suspect poses an immediate threat to the safety of the
> officers or others, and whether he is actively resisting arrest or attempting to evade
> arrest by flight. . .
>
> . . . With respect to a claim of excessive force, the same standard of reasonableness
> at the moment applies:  Not every push or shove, even if it may later seem
> unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.
> The calculus of reasonableness must embody allowance for the fact that police
> officers are often forced to make split-second judgments--in circumstances that are
> tense, uncertain, and rapidly evolving--about the amount of force that is necessary
> in a particular situation.
>
> As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in
> an excessive force case is an objective one:  the question is whether the officers'
> actions are "objectively reasonable" in light of the facts and circumstances
> confronting them . . .

Graham, 490 U.S. at 396-97, 109 S.Ct. at 1871-72 (internal citations and quotations omitted).

As it is undisputed that Stanhope shot the Plaintiff and there has been no allegation that

James or Woods so much as touched Parker, the Court must assume, as do the Defendants, that any

claim against these Defendants for excessive force is based on their alleged failure to intervene and

prevent the shooting.[4]  An officer may be held liable even if he does not use excessive force himself

---

[4]The Plaintiff's failure to respond to the Defendants' contentions and, thereby, clarify his
allegations of excessive force as to these Defendants, has left the Court to only speculate as to
the source of Parker's claims and indeed to his intention to continue to pursue them.

if he owes the victim a duty of protection against such force by another officer.  Williams v. Holt, No. 3:02-CV-634, 2006 WL 2290471, at *5 (E.D. Tenn. Aug. 8, 2006) (citing Turner v. Scott, 119 F.3d 425, 429 (6th Cir. 1997)).  "To prevail on a 'failure to protect' claim, a plaintiff must show:  '(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring.'"  Id. (quoting Turner).

The affidavits of Defendants James and Wood, which are uncontroverted by the Plaintiff, reflect that both deputies were positioned at the front of the trailer for the duration of the events alleged in this action and could not see and were unaware of what was occurring at the rear of the residence at the time shots were fired.  Thus, there is no evidence to suggest that they observed or had reason to know excessive force would be used or that they had time to intercede in what appears to have been rapidly evolving events.  Accordingly, as summary judgment on the failure-to-protect claim against these Defendants is warranted, the motion is GRANTED.  See id. at *6 ("Absent some evidence to suggest [the defendant officer] had a realistic opportunity to intervene in . . . unlawful conduct . . ., [the plaintiff] has failed to bear his burden of proof on the elements of his failure-to-protect claim").

6.    Punitive Damages.

The Defendants further aver that Plaintiff's punitive damages claim against the County must be dismissed.  It has been generally held that § 1983 plaintiffs cannot recover punitive damages against a municipality.  See Jefferson v. City of Tarrant, Ala., 522 U.S. 75, 79, 118 S.Ct. 481, 485, 139 L.Ed.2d 433 (1997) (citing Newport v. Fact Concerts, Inc., 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981)); Chonich v. Wayne County Cmty. Coll., 973 F.2d 1271, 1274 n.3 (6th

Cir. 1992), cert. denied, 512 U.S. 1236, 114 S.Ct. 2740, 129 L.Ed.2d 860 (1994).  Accordingly,

Plaintiff's claims for punitive damages against the County are DISMISSED.[5]

B.    John Doe Defendants.

The Plaintiff named as Defendants in this action "other unidentified officers of the

Henderson County Sheriff's Department," as to which the County seeks dismissal in the instant

motion.  Service of process cannot be made on a fictitious party and has not been made against these

unidentified defendants.  Moreover, the filing of a complaint against John Doe defendants does not

toll the running of the statute of limitation against such parties.  See Cox v. Treadway, 75 F.3d 230,

240 (6th Cir. 1996); Bufalino v. Mich. Bell Tel., 404 F.2d 1023, 1028 (6th Cir. 1968).  Thus, to the

extent the Plaintiff seeks to bring a claim against any individual other than those specifically named,

he must identify the defendant and file a new lawsuit within the one-year statute of limitations

applicable to § 1983 actions.  See Tenn. Code Ann. § 28-3-104(a).  His claims against the unknown

officers of the Henderson County Sheriff's Department in this lawsuit are DISMISSED.[6]

C.    State Law Claims.

1.    Violation of the Tennessee Constitution.

The Defendants maintain that the Plaintiff's state constitutional claims fail as a matter

of law because the Tennessee courts do not recognize a private cause of action for violation of the

Tennessee Constitution.  In Bowden Building Corporation v. Tennessee Real Estate Commission,

15 S.W.3d 434 (Tenn. Ct. App. 1999), app. denied (Feb. 14, 2000), the Tennessee Court of Appeals

noted that when a person's federal constitutional rights are violated, he can "maintain a private cause

---

[5]Again, the Plaintiff has offered no contrary argument on this issue.

[6]The Plaintiff has offered no objection to the Defendants' contentions in this regard.

of action for damages against the federal officer, even though no statute expressly creates such a cause of action." Bowden Bldg. Corp., 15 S.W.3d at 446 (citing Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 395-97, 91 S.Ct. 1999, 2004-05, 29 L.Ed.2d 619 (1971)). However, the court went on to state that "Tennessee . . . has not recognized any such implied cause of action for damages based upon violations of the Tennessee Constitution." Id. (citations omitted). Similarly, in Cline v. Rogers, 87 F.3d 176 (6th Cir.), cert. denied, 519 U.S. 1008, 117 S.Ct. 510, 136 L.Ed.2d 400 (1996), the Sixth Circuit, analyzing Tennessee law, concluded that "[t]he plaintiff can state no claim of a state constitutional violation in this case because Tennessee does not recognize a private cause of action for violations of the Tennessee Constitution." Cline, 87 F.3d at 179 (citing Lee v. Ladd, 834 S.W.2d 323 (Tenn. Ct. App.), app. denied, (Tenn. 1992)); see also Boling v. Gibson County, No. 05-1129-T-AN, 2005 WL 1936299, at *2 (W.D. Tenn. Aug. 1, 2005) ("Tennessee does not recognize an implied private cause of action for alleged violations of the Tennessee Constitution."). Considering that the Plaintiff did not address the state constitutional claim in response to the instant morion, it may also have been abandoned. In any case, because the Tennessee courts have not recognized a private right of action for violations of the state constitution, the Defendants' motion for summary judgment as to those claims is GRANTED.

2.     State Law Claims.

Because they are governmental employees, the individual Defendants are immune from actions under state law except as provided under the Tennessee Governmental Tort Liability Act ("TGTLA"), Tenn. Code Ann. 29-20-201 et seq. See Cunningham, 337 F.Supp.2d at 1069. The § 1983 claims would ordinarily confer supplemental jurisdiction over the TGTLA claim because they arise out of the same facts and form part of the same case or controversy. See 28 U.S.C. §

1367(a).  However, TGTLA claims must be brought in "strict compliance" with the terms of the statute.  Tenn. Code Ann. § 29-20-201(c).  The TGTLA gives the state circuit courts exclusive original jurisdiction over claims brought pursuant to its provisions.  Tenn. Code Ann. § 29-20-307.

A federal district court may, in its discretion, decline supplemental jurisdiction over a state law claim, even if jurisdiction would otherwise be proper under § 1367(a).  Section 1367(c)(4) allows a district court to "decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."  28 U.S.C. § 1367(c)(4).

In Gregory v. Shelby County, Tennessee, 220 F.3d 433 (6th Cir. 2000), the Sixth Circuit affirmed the district court's dismissal of the TGTLA claims, stating, "[i]n this instance, the Tennessee legislature expressed a clear preference that TGTLA claims be handled by its own state courts.  This unequivocal preference of the Tennessee legislature is an exceptional circumstance for declining jurisdiction."  Gregory, 220 F.3d at 446; see also Maxwell v. Conn, No. 89-5060, 1990 WL 2774 (6th Cir. Jan.18, 1990) (TGTLA's grant of exclusive jurisdiction to the state courts "belie[d]" plaintiff's argument that he could expect to try the TGTLA claims in the same proceeding as his federal claims); Spurlock v. Whitley, 971 F.Supp. 1166, 1185 (M.D. Tenn. 1997).

Furthermore, in Beddingfield v. City of Pulaski, 666 F.Supp. 1064 (M.D. Tenn. 1987), rev'd on other grounds, 861 F.2d 968 (6th Cir.1988), the court held that the TGTLA's exclusive grant of jurisdiction to the state circuit courts precluded the federal court's exercise of supplemental jurisdiction over TGTLA claims.  The court reasoned that, when such supplemental state law claims involve neither federal law nor federal diversity jurisdiction, no Supremacy Clause interests are implicated.  Therefore, federal courts would appear obligated to apply the TGTLA limitations on

suability as a matter of state substantive law.  See Fromuth v. Metro. Gov't of Nashville, 158

F.Supp.2d 787, 798 (M.D.Tenn.2001).  The Court declines to accept jurisdiction over the Plaintiff's

claims brought pursuant to Tennessee law in accordance with 28 U.S.C. § 1367(c)(4).  Accordingly,

they are hereby DISMISSED.[7]

CONCLUSION

For the reasons articulated herein, the motion of the Defendants for summary judgment is

GRANTED.

IT IS SO ORDERED this 5th day of October, 2006.


s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

---

[7]As is the case with certain other claims addressed in the Defendants' motion, Parker did
not respond to the arguments presented concerning the TGTLA and, therefore, it is unclear
whether he chose to forego them.