IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

JONATHAN PARKER,

    Plaintiff,

v.                                                                                          No. 05-1358 B

HENDERSON COUNTY, TENNESSEE, et al.,

    Defendants.

_____

ORDER DENYING MOTION FOR SUMMARY JUDGMENT OF
DEFENDANT DAVID STANHOPE
_____

INTRODUCTION AND PROCEDURAL BACKGROUND

This lawsuit was brought by the Plaintiff, Jonathan Parker, against various Defendants alleging, pursuant to 42 U.S.C. § 1983, violation of his civil rights. He also alleged violation of the Tennessee Constitution, as well as state law claims of negligence, gross negligence, assault, battery and false arrest. In an order entered August 28, 2006, the Court granted in part and denied in part the motion for summary judgment of Defendants City of Lexington, Tennessee; Roger Loftin; David Stanhope; Jeff Middleton and Brent Marcum, and dismissed Plaintiff's claims against all the movants therein except for Stanhope. On October 5, 2006, this Court granted summary judgment in favor of Defendants Henderson County, Tennessee; Sheriff Ricky Lunsford; Mark Wood and Chris James. As a result, the only remaining claim in this case is that for excessive force against Defendant Stanhope. Pending before the Court is his motion for summary judgment as to the remaining claim in accordance with Rule 56 of the Federal Rules of Civil Procedure.

STANDARD OF REVIEW

Rule 56, which states in pertinent part that a

> . . . judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); Canderm Pharmacal, Ltd. v. Elder Pharm., Inc., 862 F.2d 597, 601 (6th Cir. 1988). In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324, 106 S. Ct. at 2553. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986). The "judge may not make credibility determinations or weigh the evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

## FACTS

This lawsuit arose from the November 19, 2004 shooting of the Plaintiff by Defendant Stanhope, a police officer for the City of Lexington, Tennessee, outside his trailer home during the execution of a search warrant. The warrant was to be executed by officers of the Lexington Police Department and members of the Henderson County, Tennessee Sheriff's Department. (Aff. of David

Stanhope ("Stanhope Aff.") at ¶ 6)  The Defendant was the first officer on the scene.  The plan was that he would approach the trailer on the pretext of investigating a loud music disturbance call and keep the occupant busy while other officers advanced for execution of the warrant. (Stanhope Aff. at ¶ 10)

Parker was outside his trailer when he saw Stanhope arrive in his police cruiser. (Dep. of Jonathan Parker ("Parker Dep.") at 27)  According to his deposition testimony, the Plaintiff was talking on the phone and peering out across the yard.  He saw a figure getting out of a police car and heard him say something but did not believe the voice was addressing him. (Parker Dep. at 29)  He recalled that

> I know it ain't none of my business because he didn't come to my house.  So I goes back in the house.  Being that he's way on across the yard, I know at least forty, maybe fifty yards away, I know, you know, he couldn't be coming over here.  When I go in the house, I close the door.  I go and turn the music down.  I hear my dog barking a little bit.  And I'm washing clothes.  So I go down the hallway.  I'm going to check the clothes.  But I hear the dog; she's kind of getting aggressive.  So I go to close the back door -- I go to reach down to close the back door.  And I see fire, you know, shoot out.  And then I heard somebody yell, you know, "Police, get down," but by that time I'm already hit.
>
> *   *   *
>
> I fell down.  I fell down.  I fell down on the floor.  I had the phone in this [right] hand which I was reaching down for the doorknob with.

(Parker Dep. at 29-30)

In his deposition, Stanhope recalled that, when he exited his vehicle, he observed a black male standing in the front yard as he pulled up.  He stated that "[a]s I turned around to say something to him, before -- I believe before I ever said anything to him, he ran up the steps and in the house." (Video Dep. of Mr. David Stanhope ("Stanhope Dep.") at 34)  The Defendant confirmed later in his deposition that Parker was "going back in the house before [Stanhope] could ever say anything to

3

[Parker]." (Stanhope Dep. at 38)  In his affidavit filed as an exhibit to the instant motion, Stanhope indicated that he got out of his patrol car and "approached Mr. Parker to ask if he had heard any loud music." (Stanhope Aff. at ¶ 13)  It is undisputed that Parker did not see anyone else outside except for the police officer. (Parker Dep. at 128)  Nor is it in dispute that Parker stepped back into his trailer once he saw the officer and that he was observed doing so by Stanhope. (Parker Dep. at 106, Stanhope Aff. at ¶ 14)  Once inside, the Plaintiff moved to the back of his residence. (Parker Dep. at 29)  Stanhope advised other officers on the scene of Parker's movements and proceeded toward the rear of the trailer in order to block the Plaintiff's escape. (Aff. of Jeff Middleton ("Middleton Aff.") at ¶¶ 17, 22)  Stanhope observed Parker at the back door of the trailer with an object in his right hand. (Middleton Aff. at ¶ 20, Parker Dep. at 30)

According to Stanhope and fellow officer Jeff Middleton, the Defendant identified himself as a police officer and ordered Parker to drop the object and show his hands. (Stanhope Aff. at ¶ 21, Middleton Aff. at ¶ 24)  Parker did not comply, and turned toward Stanhope with the object in his hand. (Stanhope Aff. at 24)  This assertion is disputed by the Plaintiff, who testified in his deposition that the officer did not identify himself until after the shooting had occurred and never gave him any instructions whatever. (Parker Dep. at 29-30)  All Parker recalled hearing was the barking of his dog. (Parker Dep. at 57)

Stanhope related in his affidavit that he saw "a glare of light off of the object and believed [Parker] to be armed."  When the Plaintiff turned and pointed the object in his direction, the officer fired three shots, one of which struck the Plaintiff, who dropped the object he held in his hand. (Stanhope Aff. at ¶¶ 20, 25)  In his deposition, the Defendant reiterated that he saw what he believed to a weapon in Parker's hand, stating that "I saw something that looked -- it looked circular. And,

I mean, that's -- that's the biggest thing I can remember, is that I saw something that looked like it was circular."  (Stanhope Dep. at 42-43)

## MERITS OF THE DISPOSITIVE MOTION AND ANALYSIS

Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution or laws."  42 U.S.C. § 1983.  In order to prevail on such a claim, a § 1983 plaintiff must establish "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law."  Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003).

As a shield to a § 1983 action, an individual defendant may argue that he is entitled to qualified immunity.  Crockett v. Cumberland Coll., 316 F.3d 571, 579 (6th Cir. 2003).  "[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Wilson v. Layne, 526 U.S. 603, 609, 119 S. Ct. 1692, 1696, 143 L. Ed. 2d 818 (1999).  (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)); see also Buckner v. Kilgore, 36 F.3d 536, 539 (6th Cir. 1994), reh'g and suggestion for reh'g en banc denied (Nov. 21, 1994).

The Supreme Court has articulated a two step test to determine whether qualified immunity is appropriate.  See Saucier v. Katz, 533 U.S. 194, 200-01, 121 S. Ct. 2151, 2155-56, 150 L. Ed. 2d 272 (2001), Soloman v. Auburn Hills Police Dep't, 389 F.3d 167, 172 (6th Cir. 2004).  "A court required to rule upon the qualified immunity issue must consider, then, this threshold question:

Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier, 533 U.S. at 200-01, 121 S. Ct. at 2155-56. If this question is answered in the affirmative, "the next, sequential step is to ask whether the right was clearly established." Id. at 201, 121 S. Ct. at 2156.

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV; see Graham v. Connor, 490 U.S. 386, 395, 109 S. Ct. 1865, 1871, 104 L. Ed. 2d 443 (1989); Tallman v. Elizabethtown Police Dep't, 167 F.App'x 459, 462 (6th Cir. 2006) (citing Graham). "A Fourth Amendment seizure occurs when there is a governmental termination of freedom of movement through means intentionally applied." Scott v. Harris, ___ S. Ct. ___, 2007 WL 1237851, at *5 (U.S. Apr. 30, 2007) (No. 05-1631) (quoting Brower v. County of Inyo, 489 U.S. 593, 596-97, 109 S. Ct. 1378, 103 L. Ed. 2d 628 (1989)). "[A] claim of excessive force in the course of making a seizure of the person is properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." Id. (quoting Graham, 490 U.S. at 388, 109 S. Ct. 1865) (internal quotation marks omitted). Thus, the Court must first consider whether Stanhope's actions were objectively reasonable. See id. "Because police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation, the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective." Saucier, 533 U.S. at 205, 121 S. Ct. at 2158 (quoting Graham, 490 U.S. at 396-97, 109 S. Ct. 1865) (internal citations and quotation marks omitted).

> [W]hether the use of deadly force at a particular moment is reasonable depends primarily on objective assessment of the danger a suspect poses at that moment. The assessment must be made from the perspective of a reasonable officer in the defendant's position. That objective assessment requires asking whether the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others. Under that standard, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

Bouggess v. Mattingly, ___ F.3d ___, 2007 WL 1109076, at *2 (6th Cir. Apr. 16, 2007) (citing Brousseau v. Haugen, 543 U.S. 194, 197, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004) & Tennessee v. Garner, 471 U.S. 1, 11-12, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985)) (internal citations and quotation marks omitted). "Excessive force claims . . . are evaluated for objective reasonableness based upon the information the officer[] had when the conduct occurred." Saucier, 533 U.S. at 207, 121 S. Ct. at 2159.

In this case, if the finder of fact were to credit Parker's version of the events, it could conclude that Stanhope lacked probable cause to believe the Plaintiff posed a threat of serious physical harm, either to the officer or to others and that no warning, if feasible, was given. Consequently, summary judgment is not warranted. As the Sixth Circuit has articulated,

> [w]hen the legal question is completely dependent upon which view of the facts is accepted by the jury, the [d]istrict [c]ourt cannot grant a defendant police officer immunity from a[n excessive] force claim. This is because the reasonableness of the use of force is the linchpin of the case. If the jury determines the officer shot the suspect without a reasonable belief that he posed a significant threat of death or serious physical injury to the officer or others, then the officer's actions were legally unreasonable under the Fourth Amendment. On the other hand, if the jury believes the officer's version of the facts and finds the officer's conduct was reasonable, then he will be entitled to qualified immunity. Where . . . the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability.

Sova v. City of Mt. Pleasant, 142 F.3d 898, 903 (6th Cir. 1998) (citing Brandenburg v. Cureton, 882

F.2d 211, 215-16 (6th Cir. 1989)).  The Defendant's motion for summary judgment is therefore DENIED.

    IT IS SO ORDERED this 4th day of May, 2007.

                                        s/ J. DANIEL BREEN
                                        UNITED STATES DISTRICT JUDGE